McIlvaine, J.
Tne record shows that in the year 1871, the Cincinnati and Springfield Railway Company, having ac: quired a right of way, one hundred feet wide, through the lands of plaintiff and others, entered into a contract with Snell *466 Denton & Co., for the construction of its railroad through said premises, as follows:
“ These articles of agreement, made and concluded this 19th day of May, in the year of our Lord, one thousand eight hundred and seventy-one, by and between Nixon Denton, E. II. Williams, Abner Taylor, James Alien, Thomas Snell, James T. Snell, as Snell, Denton & Co., of the first part; and the Cincinnati and Springfield Eailway Company, of the second party
“ Witness: That for and in consideration of the payments and covenants hereinafter mentioned, to be made and performed by said railroad company, the said party of the first part doth hereby covenant and agree to construct and finish, in the most substantial and workmanlike manner, to the satisfaction and acceptance of the engineer of the Cincinnati and Springfield Eailway Company, all the grubbing and clearing, excavation, embankment, on sections number one (1) to twenty four (24), both inclusive, of the Cincinnati and Springfield Eailway, between Cincinnati and Dayton, the said work to be done as described in the following specifications, and agreeably to the directions, from time to time, of the said engineer or his assistants, and finished on or before the first day of February, in the year one thousand eight hundred and seventy-two:
“ Grubbing and clearing. When the surface of the ground on which embankments are to be built, is not more than one (1) foot below the grade line, and in all cases where excavations are to be made, the trees, stumps, and saplings on the entire ground over which excavations will extend, shall be grubbed. All stumps, trees and saplings not required to be grubbed, and standing on ground to be occupied by embankments, shall be chopped down close to the surface of the ground, and so as to be not less than one foot below grade. The entire ground on which embankments or excavations are to be made, and such additional width, not exceeding fifty feet on each side, as the engineer of the railroad may direct, shall be cleared of all trees, logs, brush and other perishable matter, and all fences shall be removed to or beyond the limits of the right of way of the company.' The fences, buildings, tim *467 ber and wood on tbe line of tbe railroad are the property of the railroad company or of the land owners, and may be taken down and removed by the owner within a reasonable time, and all such as shall not be so removed shall be cleared off by the contractor and piled up and preserved for the use of the owner, on the direction of the engineer. The contract prices will be understood as covering and including all grubbing and clearing necessary or required at borrowing pits.
“ Earth work. The grading will generally be for a single-track railroad, with excavations twenty-two feet wide at grade line, and embankments sixteen feet wide at grade line, but increased width shall be made for passing places or side-tracks, at such places as the engineer may direct. Grade line is eighteen inches below the bight at which the tops of the cross-ties are to be placed for the railroad track on the grade when finished.
“ Excavation, will include all cuttings for the road-bed, for ditches and drains, for changing turnpike or common roads- and channels of streams and all other cuttings necessary to or connected with the railroad, and which shall be directed by the engineer. Excavation will be measured in the prism of the road-bed while the material is in place. Material wasted after being excavated, and not placed in embankments, will be' paid for as excavation only. Excavations will be of such width and depth, and with side slopes of such inclination as the engineer may direct. Earth taken from roadway excavations, and hauled three hundred feet and less, and placed into roadway embankments, will be estimated as excavations only, and for all earth from roadway excavations, hauled three hundred feet and over, and placed into roadway embankments, the contracts will specify the price to be paid per cubic yard for each one hundred feet haul over three hundred feet, in addition to the price for roadway excavations; but no other measurements or allowance will be made for roadway embankments made from earth taken from roadway excavations. Earth from roadway excavations to be hauled into embankments, as far as the engineer directs, not exceeding two thousand feet. In all cases where earth from roadway excavations is wasted or carried into spoil bank, a space of three feet must be left between the *468 top slope of tlie excavations and such spoil banks, and the earth so wasted must be so placed, and spoil banks so formed as to slope backward from the road-bed excavation in such manner as the engineer shall direct, and so as to carry all surface water from the road-bed. Earth from roadway excavations, wasted or carried into spoil banks, will be estimated as excavations only, and no allowance will be made for haul. Rock excavations will be fourteen feet in width at grade, with such side slopes as the engineer shall direct. All rock taken from the cuts shall be piled up along side of cuts, as directed by the engineer, and be the property of the railway company.
“ Excavations will be classified as solid rock, loose rock, and earth excavations.
“ Solid rock excavation, will include all sand rock or lime rock which may be found in place, or which, if not so found, shall be in masses or blocks, each containing over one cubic yard; and also, all the interlying stratified date between the different strata or limestone in place.
“Loose-rock excavation, will include all detached rocks containing over one cubic foot each.
“ Earth excavation, will include all material which does not specifically belong to rock excavation.
“ Embankments for' road-bed of railroad, for common roads, road-crossings, bridge-approaches, guard-banks, and embankments of whatsoever kind required to construct, or for whatsoever purpose incidental to or connected with the construction of the railroad, and which may be required by the engineer in charge, shall be built at his direction. Embankments shall, as far as practicable, be built of the material taken from the cuts. They shall be commenced at bottom of full width, and carried up with the required slope. The form and dimensions of embankments shall conform to the stakes and directions of the engineer, and embankments which will be required about masonry shall be built at such time, and in such manner, and of such material, as the engineer shall direct. Embankments shall be built of such bight and width as will, in the opinion of the engineer, leave them of full size when they shall have become fully settled and compact. Embank- *469 merits made from borrowed earth will be measured in the prism of the road-bed, and in no case, unless specially directed by the chief engineer, will boi-rowpits be measured. Borrowed earth to form embankments will be taken from such place as may be selected by the engineer, and the excavation made in,, borrow pits shall be so shaped and worked as not to unnecessarily injure or disfigure the lands on which they are made.. Should the engineer require borrowed earth to be hauled over three hundred feet into embankments, then the haul over three hundred feet to be paid for at the contract price for haul. All borrowing ditches, from which earth is taken to form- embankments, must be so worked and shaped as to leave good, continuous and uniform ditches, to afford free passage to all water along and from said ditches. The inner side of all such ditches must have same slope as roadway embankments ; a berme of two feet where embankments are five feet and less, and three feet where embankments are over five feet, must in all cases be left between the outer toe or base of embankment and the inner angle of side or borrowing ditches. Embankments shall be built in layers of not more than three feet vertical bight extending across the bank for its full width. In case where temporary trestling is required, in order to grade the track a's first laid over, or from masonry or streams of uneven ground, such trestling shall be built by the contractors without charge to the company. And in all cases the contract price for work will be understood to cover and include all materials, labor and expense required for the work, and everything required for or incidental to the carrying on or completion of the same.
“ Whenever the route of the railroad is traversed by public or private roads, commodious passing-places must be kept open and in safe condition for use. And in passing through farms or lots, the contractor must also keep up, at his own expense, such fences as will be necessary for the preservation of the property and the trees, grass, and other crops.
“ The work to be commenced as soon as the railway company acquire title to the lands upon which the work is to be done.
“ No charge shall be made bv the contractor for hindrance *470 or delay, from any cause, in the progress of the work or any portion thereof.
“ All of the work shall be done in a neat, substantial and workmanlike manner, and at the time of the acceptance of any part of it, the same shall be neatly trimmed, and in all respects fully completed, to the satisfaction of the engineer in charge.
“ And the said Cincinnati and Springfield Eailway Company doth promise and agree to pay to the said party of the first part, for completing this contract as follows, viz.:
“ For grubbing and clearing, ten (10) dollars per station of one hundred feet, for work actually done.
“ For earth excavation, per cubic yard, nineteen (19) cents.
“ For rock excavation, per cubic yard: Loose rock excavation, seventy (70) cents; solid rock excavation, one dollar and ten cents ($1.10).
“For haul, per cubic yard, per one hundred feet after first three hundred feet, one and one-half (1 1-2) cents.
“ For embankment from borrowed earth, per cubic yard, twenty '(20) cents.
“ And for all work for which no price shall be fixed in this contract, such price as shall be agreed on by the parties, or, if the parties shall not be able to agree, such price as the engineer shall deem reasonable and fair.
“ On or soon after the first day of each month, during the progress of this work, an estimate shall be made of the relative value of the work done, to be judged of by the engineer; and ninety per centum of .the amount of said estimate shall be paid to the party of the first part, by the twelfth of the month is which said estimate shall be made; and when all the work embraced in this contract is completed, agreeably to the specifications, and in accordance with the directions and to the satisfaction and acceptance of the engineer of said railroad company, there shall be a final estimate made by said engineer, of the quantity, quality, character, and.value of said work, according to the terms of this agreement; and within ten days after the date of such estimate, the balance appearing due to the party of the first part shall be paid to the said first party, upon the said party giving a release to the said railroad company *471 from all claims and demands whatsoever, growing in any manner out of this agreement; and when any three (3) consecutive sections thereof shall be fully finished as above, the same shall be accepted by said company.
“ It is further covenanted and agreed, between the said parties, that said party of the first part shall give personal attention and superintendence to the work embraced in this contract.
“ The said party of the first part further agrees not to keep, or suffer to be kept or used, ardent spirits on the work, or in any house or tenement built or occupied by said party, or by the workmen in the employment or under the control of said party, on or near said road ; and agrees to discharge from his employment, and from the work, any person who is guilty of a breach of this regulation.
“ It is further agreed and understood, that the work embraced in this contract shall be commenced within twenty-five (25) days (or as soon as the right of way is obtained) from this date, and prosecuted with such force as the engineer may deem adequate to its completion within the time specified ; and if at any time the said party of the first part shall refuse or neglect to prosecute the work, and every part of it, with a force sufficient in the opinion of the said engineer to secure its completion within the time specified in this agreement, then and in that case, the engineer, or such other agent as he may designate, may, on ten days’ notice, proceed to take possession of, and use in completing the work or any part of it, such tools, machinery, tenements and other buildings and supplies or materials as may be in the work, or prepared for it, and belonging to the party of the first part; to purchase such additional tools, material, machinery, buildings and supplies as he may deem necessary or proper ; and to employ shell number of workmen laborers, teams and overseers as may in the opinion of the said engineer be necessary to insure the completion of the work, within the time hereinbefore limited, or as soon thereafter as may be practicable, at such prices and wages as he may find it necessary or expedient to give; pay *472 for all such purchases and teams, and all persons so employed, and charge over the amount so paid to the party of the first ¡Dart, as for so much money paid to said party of the first part on this contract. And for failure to prosecute the work with an adequate force, for non-compliance with his directions in regard to the manner of performing it, or for any other omission or neglect of the requirements of this agreement and specifications, on the part of the party of the first part, or in case the party of the first part shall do, or persist in doing, any portion of the work embraced in this contract, in an unfaithful and unworkmanlike manner, then, for any such omission or neglect, or failure, or for such unfaithful or unskilled performance, the engineer may, at his discretion, declare this contract, or any portion, or section embraced in it, forfeited — which declaration of forfeiture shall exonerate the said railroad company from all obligations and liabilities arising under this contract, so far as they relate to the portion or section declared forfeited, the same as if this agreement had never been made; and the reserved per centage upon work done by the party of the first part, on the forfeited portion or section, may be retained forever by the said railroad company. The masonry on the sections embraced in this section shall be done, or other provisions therefor made, in time by the railroad company not to delay the work.
“ And it is mutually agreed, and distinctly understood, that the decision of the said chief engineer shall be final and conclusive in any dispute which may arise between the parties to this* agreement, relative to or touching the same, and each and every of said parties does hereby waive any right of action, suit or suits, or other remedy, in law or otherwise, by virtue of said covenants; so that the decision of the said engineer shall, in the nature of an award, be final and conclusive on the rights and claims of said parties.
“In witness whereof, the said Cincinnati and Springfield Railway Company lias, by its president, executed and signed the same, and caused the seal of said company to be affixed; and the said Snell, Denton & Co. have hereunto set their *473 hands and seals the day and year first above written in duplicate. Signed,
“Snell, Denton & Co.,
The C. & S. Railway Company,
Witness: By R. M. Shoemaker, President.”
Snell, Denton & Co. entered on the performance of this contract, and, in making an excavation within the right of way through plaintiff’s lands, removed and deposited the waste dirt on lands of the plaintiff not embraced in the right of way, to her damage, as complained of in her petition.
The main question before us is, was the railway company responsible for the wrongful act of Snell, Denton & Co. ?
The plaintiff’s claim is stated by counsel thus:
“We claim for plaintiffs:
“ First. That defendant retained control over the mode and manner of doing the work and that the contractors were, there fore, not independent contractors.
“ Second. That if the injury had been committed by independent contractors the defendant would, nevertheless, be liable, because,
“ I. It cannot delegate to others the responsibility for the proper performance of that work which it alone was authorized by law to do. It took the privileges conferred upon it cum on ere.
“ II. The owner or possessor of fixed property is responsible that it be so used, even by his independent contractors, as that others shall receive no injury.
“ III. Where injury results directly from the acts which the contractor is authorized, or permitted, to do, the person who employs the contractor and authorizes, or permits, him to do these acts is liable to the injured party.”
The first claim, in substance, is that Snell, Denton & Co. were the servants of the railway company, and therefore the doctrine of respondeat superior applies. Whether the liability contended for be strictly within the rule of respondeat superior, or an exception to the rule of non-liability of an employer for the misconduct of a contractor, the law is certainly *474 well stated in Cincinnati v. Stone, 5 Ohio St. 38, that “ where the employer retains control and direction over, the mode and manner of doing ■ the work, and an injury results from the negligence or misconduct of the contractor, or his servant or agent, the employer is placed under a liability equal and similar to that which exists in the ordinary case of principal and agent.”
The fact assumed, however, in this claim, depends wholly on the contract above set forth, and after a careful consideration of all its terms, wo are unanimously of opinion, that the railway company had no control or direction over that part of the work which resulted in damage to the plaintiff. True, the contract subjects Snell, Denton & Co., in a score, or more, of particulars, to the direction of the company’s engineer. But, with one exception, the right to direct thus reserved to the engineer relates only to the quantity of work to be done in the construction of the road, or to the condition of the work when completed, and not to the mode or manner of doing the work. The retaining of such power of control or direction does not bring the case within the reason or spirit of the rule in Cincinnati v. Stone. The principle of that rule undoubtedly is, that the right of control retained by the employer must be such as devolves upon him the duty to protect third persons from injury, and hence he cannot be heard to say that he did not direct or assent to the mode and manner in which it -was done, if injury results.
. Much stress is laid upon the following clause, found in the specifications concerning excavations: “Earth from roadway excavations to be hauled into embankments as far as the engineer directs not exceeding two thousand feet. In all cases where earth from roadway excavations is wasted or carried into spoilbanks, a space of three feet must be left between the top slope of the excavation and such spoilbanks, and the earth so wasted must be so placed and spoilbanks so formed as to slope backward from the roadbed excavation in such manner as the engineer shall direct so as to carry all surface water from the roadbed.”
The power of the engineer to direct, under this clause, is *475 limited to cases where waste earth from an excavation is thrown out over the top slope of the excavation, into spoil-banks, and as to the manner in which such spoil-banks shall be made to slope backward from the excavation.
Conceding that the railway company would be liable for an injury from the mode and manner in which such spoil-banks might be constructed, under the direction, or without the direction of the engineer, it is not claimed that the plaintiff was so injured. In wasting the earth, which resulted in plaintiff’s injury, the contractors were acting on their own responsibility without any control or right of control on the part of the engineer, as or to the mode or manner of doing the work.
Again, by the terms of the contract, Snell, Denton & Co., agreed “to do the work as described in the specifications and agreebly to the direction, from time to time, of the engineer or his assistants.” By these terms, it is contended, that the railway company reserved a general control over the mode and manner of doing the work. When the whole contract is considered, it is quite clear that “ the directions of the engineer or his assistants ” here referred to, are those only which are specially named in the specifications.
We find no provision in the contract whereby the railroad company reserved any control or right to direct the mode and manner of wasting the earth which was cast upon plaintiff’s lands by Snell, Denton & Co. Neither do we find that the company assumed, in any manner, to control the contractors in respect to such work. Hence the liability of defendant, on this ground, is not found in the proper construction of this contract.
The second claim of plaintiff is, that if the injury had been committed by independent contractors, the defendant would nevertheless be liable.
The general rule, that employers are not liable for the negligence or misconduct of independent contractors, is not disputed. It is contended, however, that the rule does not apply in cases of contracts with respect to real property. This contention cannot be maintained. The rule applies to *476 contracts in respect to real as well as personal property. It is, however, in respect to real estate, subject to these exceptions. The employer cannot relieve himself from liability, by contracting with, others for the performance of work, where the necessary or probable effect -of the performance of the work would injure third persons; nor can he relieve himself of duties resting upon him as the owner of real estate not to do or suffer to be done upon it, by others, that which would constitute a nuisance.1 Cooley on Torts, 547. The railroad constructed on defendant’s right of way is not complained of as a nuisance; nor does it appear that the wasting of earth on plaintiffs land was a necessary or probable consequence of the construction of the road. Personally I think, under this contract, the defendant was bound to furnish space for the deposit of waste material, and, if it did not, it might be inferred that it assented to or procured the contractors to cast it upon plaintiff’s land; but for aught that appears in this record, ample space was provided, and the act of casting the waste earth on plaintiff’s land was a willful trespass by the contractors of which the railway company had no knowledge, even by its engineer, and to which it in no wise consented.
Again, it is contended that a railroad company cannot delegate to others the responsibility for the proper performance of work which it alone was authorized to do.
The scope of this proposition is not readily perceived. In support of it, it is said in argument, that “when the legislature gives a railway corporation the right to take the land of citizens and build its railway thereon without their consent, it confers a dangerous and extensive authority, and it cannot be implied that the recipient of such power may re-delegate it, or shift the responsibility for its proper exercise. The acts of the contractor’s workmen were the acts of the defendant. Except for defendant’s charter, those workmen would have been trespassers on plaintiff’s land. They were there doing work which the defendant alone was authorized to do. They were then in defendant’s right and exercising defendant’s corporate functions.” This argument is fallacious. These workmen on plaintiff’s land were trespassers, notwithstanding defendant’s *477 charter. The defendant was not authorized to do work there. This work was not the exercise of corporate functions. Undoubtedly, the defendant could not transfer to its contractors the right to be a corporation, or the right of eminent domain, or the right to commit a trespass. If the defendant had sent its contractors upon land, where it had no right to go, for the purpose of building its road, or wasting material, its liability could not be doubted. The question in this case, however, is this: If a railway company by the exercise of its power of eminent domain, acquires all the land necessary to the construction of its road, and sends its contractors to construct its road thereon, is it necessarily liable for a trespass committed by them while engaged upon the work? "We think not. The work of constructing a railroad is not corporate work imless it be done by a corporation through its agents and servants. And a person may contract with a railroad company to construct its road, without becoming its agent or servant.
This proposition therefore resolves itself into a single question, May a railroad corporation, having power to contract as fully as a natural person, in relation to its corporate business, enter into a contract with another person for the construction of its road without retaining control over the mode and manner of doing the work ? We can see no reason to doubt it. Of course any condition imposed upon the right to construct its road must be performed and the company cannot shift its responsibility for the performance. But this is no new principle, nor one applicable to railroad corporations alone. Where a right is possessed by a natural person and a duty is attached to the exercise of the right, such duty must be performed : such natural person cannot relieve himself from liability through the intervention of an independent contractor. So, on the other hand, whore the law exempts a natural person, as employer, from liability for the wrongful act of his contractor it will also, under like circumstances, exempt a corporation, as employer, from liability for the wrongful act of its contractor.

Judgment ajk’med.